UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-------------------------------------------------

FREDERICK P. KUNZMANN AND
VLADIA KUNZMANN,

                     Plaintiffs,

        -against-

RENATO STARCIC

                     Defendant.

-------------------------------------------------x

Index No.:

**COMPLAINT**

Plaintiffs Vladia Kunzmann and Frederick P. Kunzmann ("Plaintiffs" or "Sellers"), for their Complaint against Defendant Renato Starcic ("Defendant" or "Purchaser"), state and allege as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction predicated upon diversity of citizenship pursuant to 28 U.S.C. §1332. The amount in controversy exceeds $75,000.00.

2.     Venue is proper pursuant to 28 U.S.C. § 1391 (a) (2).

3.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (a) (2) in that a substantial portion of the events giving rise to the claims asserted herein occurred in this judicial District.

## THE PARTIES

4.     Plaintiffs are, and at all relevant times were, citizens of the state of New York and reside at 346 East 51st Street, Apartment 1R, New York, New York 10022.

5.     Upon information and belief, Defendant is, and at all relevant times was, a citizen of the state of New Jersey and resides at 243 Morningside Avenue, Cliffside Park, New Jersey 07010.

## BACKGROUND

6.    Plaintiffs are and were at all times hereinafter mentioned the owners in fee of certain real property located at 346 East 51st Street, New York, New York 10022.

7.    On March 10, 2008 Plaintiffs and Defendant entered into a contract of sale for the premises located at 346 East 51st Street, New York, New York 10022 (the "Premises").

8.    The contract of sale also included provisions in the Rider to the contract of sale (collectively, the "Contract"). A copy of the Contract is attached hereto as Exhibit "A".

9.    The purchase price for the Premises is $4,175,000.00 ("Purchase Price").

10.    Pursuant to the Contract, "the closing of title …shall take place on the scheduled date and time of closing specified in Schedule D." See Section 3 of the Contract attached hereto as Exhibit "A".

11.    Pursuant to Schedule D, the closing was scheduled to take place on May 2, 2008 (the "Closing"). See Schedule D of the Contract attached hereto as Exhibit "A".

### A.    The Down Payment and Financing Commitment

12.    The down payment of $417,500.00 was to be paid in two (2) installments; $100,000.00 upon the execution of the Contract; and the balance of $317,500.00 upon receipt of the mortgage commitment by Defendant.

13.    As to the first installment, pursuant to the terms of the Contract, the "Purchaser shall pay the amount of $100,000 upon signing this Contract and shall have 30 days within which to obtain financing." See Paragraph 1 (a) of the Rider attached hereto as Exhibit "A".

14.    On March 3, 2008, as part of the down payment, Defendant issued a check in the amount of $100,000, the proceeds of which were to be held in Plaintiffs' counsel's escrow account. A copy of the check is attached hereto as Exhibit "B".

15.    Those funds ($100,000.00) are being held in escrow pursuant to the Contract.

16.    Subsequently, within 30 days after the Contract was entered into, on April 10, 2008, Defendant obtained financing from Emigrant Funding Corp.  A copy of the commitment is attached hereto as Exhibit "C".

17.    As to the second installment of the down payment, pursuant to the terms of the Contract, "in the event Purchaser <u>does</u> obtain financing within said 30 day period, Purchaser pay the balance of the down payment amount of $317,500 within 3 business days thereafter and no further mortgage contingency shall exist." (emphasis added) <u>See</u> Paragraph 1 (b) of the Rider attached hereto as Exhibit "A".

**B.    The Contract Breaches**

18.    On May 6, 2008, real estate counsel for Plaintiffs sent real estate counsel for Defendant, a letter requesting that Defendant tender the balance of the down payment.  <u>See</u> letter from Plaintiffs' real estate counsel attached hereto as Exhibit "D".

19.    Defendant failed to remit the balance of the down payment, $317,500, despite due demand.

20.    Thus, because Defendant breached the contract, Plaintiffs are entitled to liquidated damages in the amount of $417,500.00 (inclusive of the $100,000 maintained in Plaintiffs' real estate counsel's escrow account).

21.    Additionally, the Closing never took place on May 2, 2008 as required by the Contract and Defendant is therefore in breach of the Contract.

22.    The Contract further provides that, in the event of default by Defendant, Plaintiffs shall be entitled to liquidated damages in the amount of $417,500.00, which is the full amount of the down payment.  <u>See</u> Rider at paragraph 1 attached hereto as Exhibit "A".

23.    The amount of the liquidated damages is reasonable and does not constitute a penalty.

### AS AND FOR A FIRST CLAIM FOR RELIEF

**(Breach of Contract)**
**(Failure to Provide Down Payment)**

24.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "23" of this Complaint as if fully set forth herein.

25.    Defendant failed to tender the balance of the down payment within three business days of having received the commitment from Emigrant Funding Corp.

26.    Plaintiffs gave Defendant the opportunity to cure his breach, which Defendant refused.

27.    Defendant knowingly and willfully refused to perform his obligations under the Contract concerning payment of the balance of the down payment.

28.    As a direct, proximate and foreseeable result of Defendant's failure to provide the full amount of the down payment Plaintiffs have been damaged in the amount of $317,500.00 exclusive of costs and interest.

### AS AND FOR A SECOND CLAIM FOR RELIEF

**(Declaratory Judgment)**

29.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "28" of this Complaint as if fully set forth herein.

30.    The down payment under the Contract was to be paid in two (2) installments.

31.    As to the first installment, pursuant to the terms of the Contract, the "Purchaser shall pay the amount of $100,000 upon signing this Contract and shall have 30 days within which to obtain financing." See Paragraph 1 (a) of the Rider attached hereto as Exhibit "A".

32.    On March 3, 2008, as part of the down payment, Defendant issued a check in the amount of $100,000, the proceeds of which were to be held in Plaintiffs' counsel's escrow account. A copy of the check is attached hereto as Exhibit "B".

33.    Those funds ($100,000.00) are being held in escrow pursuant to the Contract.

34.    Subsequently, within 30 days after the Contract was entered into, on April 10, 2008, Defendant obtained financing from Emigrant Funding Corp. A copy of the commitment is attached hereto as Exhibit "C".

35.    As to the second installment of the down payment, pursuant to the terms of the Contract, "in the event Purchaser does obtain financing within said 30 day period, Purchaser pay the balance of the down payment amount of $317,500 within 3 business days thereafter and no further mortgage contingency shall exist." (emphasis added) See Paragraph 1 (b) of the Rider attached hereto as Exhibit "A".

36.    Defendant breached the Contract by failing to provide the balance of the down payment and failing to close on May 2, 2008, as required by Schedule D of the Contract.

37.    As a result of said breaches, Plaintiffs are entitled to receive the $100,000.00 currently being held in escrow.

38.    Plaintiffs have demanded same but have been refused absent an order of this Court declaring the rights of the parties to such funds.

39.    Plaintiffs seek judgment declaring that as a result of the aforementioned breaches, they are entitled to receive the $100,000.00 currently being held in escrow.

## AS AND FOR A THIRD CLAIM FOR RELIEF

### (Breach of Contract)
### (Failure to Close Title)

40.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "39" of this Complaint as if fully set forth herein.

41.    The Contract upon which Plaintiffs seek to rely provides for a closing date of May 2, 2008.

42.    Defendant wholly failed, refused and neglected to close title to the premises in question on the closing date, although Plaintiffs were at all times ready, willing and able to do so.

43.    On May 2, 2008, Plaintiffs were ready, willing, and able to perform all the terms and conditions of the Contract.

44.    Defendant wholly failed, refused, and neglected to close title to the premises by making full payment of the balance of the proceeds due under the Contract.  As a result, Defendant has breached the Contract.

45.    As a result of said breach, Plaintiffs are entitled to liquidated damages pursuant to the liquidated damages clause in the Contract.  See Paragraph 1 (b) of the Rider attached hereto as Exhibit "A".

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

a.    On the first cause of action for damages in the amount of $317,500.00 plus costs and interest;

b.    On the second cause of action declaring that as a result of Defendant's breach of the Contract, Plaintiffs are entitled to the retain the down

payment of $100,000.00 maintained in Plaintiffs' real estate counsel's escrow account;

c.      On the third cause of action, damages in the amount of $417,500.00 plus costs and interest;

d.      Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
       June 18, 2008

<div style="margin-left:40%">

CULLEN AND DYKMAN LLP

By: _____

Candice B. Lieberman (CL1754)
*Attorneys for Plaintiffs*
100 Quentin Roosevelt Boulevard
Garden City, New York 11530
(516) 357-3700

</div>

To:   Mr. Renato Starcic
      243 Morningside Avenue
      Cliffside Park, New Jersey 07010

**RENATO STARCIC**
**CARLA STARCIC**
243 MORNINGSIDE AVE.
CLIFFSIDE PARK, NJ  07010-1406

55-233/212
6100776098

6368

DATE _MAR. 3. 08_

PAY TO THE
ORDER OF _KARIN SCHULT RYAN ATT. ESCROW ACC_ $ _100,000.00_

_one hundred thisend dollars +00/xx_ DOLLARS

Security Features
Included.
Details on Back.

**CHASE** ◻
JPMorgan Chase Bank, N.A.
Montclair, New Jersey 07042
www.Chase.com

MEMO _346 EAST 51ST ST. NY_

⑆021202337⑆    6100776098⑈ 6368



**EMIGRANT**
F U N D I N G   C O R P

April 10, 2008

6 EAST 43RD STREET • 9TH FLOOR
NEW YORK, N.Y. 10017
TEL: (212) 850-4860
FAX: (212) 850-4861

Laura Moritz
Classic Mortgage
25 East Spring Valley Avenue
Maywood, NJ 07607

Re:    Commitment #: 20080053
Property:    ("Property #1") 346 East 51st Street
New York, NY 10022
("Property #2") 376 Henry Street
Fairview, NJ 07022
Borrower(s):    Corporation to be formed

Dear Ms. Moritz:

Enclosed please find two (2) copies of the commitment for the referenced premises. Please note that the loan closer assigned to this file is Milagros Rivera-Perez and may be contacted at (212) 850-4939.

An executed copy of the commitment with the required fees should be returned to my attention by no later than April 17, 2008. Unless this Commitment is so executed and timely returned to Lender, together with all required fees, the same shall terminate and Lender shall have no further obligation to make the Loan.

Very truly yours,

Tara L. Cardoza
Vice President

TAC/mrp
Enclosures

Cc: Shashi Singh



April 10, 2008

6 EAST 43RD STREET • 9TH FLOOR
NEW YORK, N.Y. 10017
TEL: (212) 850-4900
FAX: (212) 850-4881

Laura Moritz
Classic Mortgage
25 East Spring Valley Avenue
Maywood, NJ 07607

Re:    $3,250,000.00 Loan by Emigrant Funding Corporation to be secured by a blanket first
mortgage lien covering the real property and improvements located at ("Property #1")
346 East 51st Street, New York, NY 10022; Block 1343, Lot 34; and ("Property #2")
376 Henry Street, Fairview, NJ 07022; Block 210, Lot 2 (collectively, the "Property")

Dear Sir/Madam:

Emigrant Funding Corporation ("Lender") is pleased to inform you ("Borrower") that it has
approved your application for a mortgage loan on the terms set forth below and as reflected on the
attachments hereto, which are incorporated by reference herein:

**Purpose of Loan:** The Borrower represents to Lender that the Loan is for business or commercial
purposes and not for personal, family, consumer or household purposes and acknowledges that Lender
has issued this commitment letter to Borrower in reliance upon this representation by Borrower. This
representation by Borrower will survive the closing of the Loan or termination of the commitment letter
for any reason.

**Borrower:**                    Corporation to be formed

**Loan Principal Amount:**       $3,250,000.00 ("Loan")

**Interest Rate:**               Seven and three-quarters percent (7.75%) per annum

**Term:**                        Five (5) years with a five (5) year renewal option, subject to rate
                                 adjustment (*See Rider A attached*)

**Constant Monthly Payment:** $23,283.40 for interest and principal based on a 360 day year for the
actual number of days elapsed and a thirty (30) year amortization schedule.

**Escrow for Real Estate Taxes, Water/Sewer Charges and Insurance:** In addition to the constant
monthly payments for principal and interest, Borrower will be required to pay Lender monthly 1/12th of
the annual real estate taxes, water/sewer charges and hazard insurance premiums.

**Security for Loan:** (i) a blanket first mortgage lien covering the Property, together with all rights,
easements and appurtenances, including air rights and development rights, belonging thereto; the
Property consists of Property #1, a parcel of land and a four (4) story, plus partially above-grade level
basement, elevatored building containing seven (7) Class A apartments; and Property #2, a parcel of land
and a three (3) story, non-elevatored building containing seven (7) Class A apartments, two (2) attached
two (2)-car garages and a detached shed; (ii) a first perfected security interest in (x) all chattels, fixtures
and equipment (collectively, "Equipment") attached and/or used in the operation of the Property, and (y)

Commitment #20080053                              i

Borrower's operating bank account(s) in respect of the Property, which shall be maintained at Emigrant Bank; and (iii) a collateral assignment of leases and rents.

**Guarantors:** Renato A. Starcic, Carla Starcic, Joseph E. Herrera, Sandra Starcic-Herrera (a/k/a Sandra Starcic), Ronald Starcic, Ahyme Depaz-Starcic (a/k/a Ahyme Depaz and a/k/a Ahyme Starcic) and Gary Starcic (*Joint & Several*)

**Prepayment:** In full only, upon 90-days prior written notice to Lender, together with a prepayment premium calculated on the amount prepaid (whether voluntarily or following acceleration upon default) equal to: 5% in the first loan year; 4% in the second loan year; 3% in the third loan year; 2% in the fourth loan year; and 1% in the fifth loan year.

**Fees:** The following non-refundable fees will be payable by Borrower upon acceptance of this Commitment:

| | |
|---|---|
| Application Fee | $500.00 (*WAIVED*) |
| 1% Good Faith Deposit ("Commitment Fee") | $32,500.00 (*to be applied towards Borrower's closing costs at Closing*) |
| Valuation & Credit Review Fee | $3,000.00 (*RECEIVED*) |
| Environmental Audit and Inspection Fee | $3,000.00 |

**Costs:** All costs and disbursements in connection with the Loan are payable by Borrower; these will include, but are not limited to, mortgage tax, recording fees, mortgage title insurance, survey charges, and Lender's attorneys' fees and disbursements for preparation of the Loan Documents and closing the Loan.

**Conditions:** This Commitment and Lender's obligation to make the Loan are conditioned, among other provisions, upon Lender's receipt and approval, to its sole satisfaction, of the following:

1. Environmental audits of the Property and, if deemed necessary, such other environmental audits as may be required by Lender, which shall be conducted at Borrower's expense.

2. Lender's receipt and satisfactory review of a tank tightness test of the underground storage tank at Property #2. Said test shall be performed by a licensed company which is acceptable to Lender, and shall be conducted at Borrower's expense.

3. Certified income and expense statements pertaining to the Property on at least an annual basis from Borrower.

4. Schedule B to contract of sale for Property #1, said contract shall be amended to reflect block and lot; evidence of sufficient funds to cover the balance of the purchase price of Property #1 over and above the loan proceeds; any reduction in the purchase price will effect an equivalent reduction in the Loan Principal Amount.

5. **NOTICE TO BORROWER**
   **YOU MAY BE REQUIRED TO PURCHASE PROPERTY INSURANCE AS A CONDITION OF RECEIVING THE LOAN.**

   **IF PROPERTY INSURANCE IS REQUIRED, YOU MAY SECURE INSURANCE FROM A COMPANY OR AGENT OF YOUR OWN CHOOSING.**

A casualty insurance policy, written on an "All Risk" basis and in an amount to be determined by Lender, and flood insurance, if the Property is located in a "Flood Hazard Area"; covering all buildings and improvements on the Property, each naming Lender, its successors and assigns under a mortgagee endorsement. Further insurance requirements may be contained in the attachments hereto. Such requirements are incorporated by reference herein. The ORIGINAL policy or policies together with evidence of the payment of the first year's premium thereof, must be delivered to Lender upon the Closing.

THE PROPERTY(IES) BEING MORTGAGED MUST BE INSURED, AS PROVIDED FOR IN THIS COMMITMENT, BY AN INSURANCE COMPANY ACCEPTABLE TO LENDER AND WILL HAVE **BOTH** AN A.M. BESTS' & CO. FINANCIAL PERFORMANCE RATING OF NOT LESS THAN "VIII" **AND** A.M. BESTS' & CO. LETTER RATING OF NOT LESS THAN "A-".

6.    Copy of fully executed brokerage fee agreement between Classic Mortgage and Borrower.

7.    Personal tax returns for 2006 shall be signed by Renato A. Starcic and Carla Starcic at Closing.

8.    Personal tax returns for years 2005 and 2006 shall be signed by Joseph E. Herrera and Sandra Starcic-Herrera at Closing.

9.    Complete, signed personal tax returns for years 2005 and 2006 from Ronald Starcic and Ahyme Depaz-Stacic and subsequent verification of their personal tax returns for years 2005 through 2007 with the Internal Revenue Service.

10.   Form 8863 to Gary Starcic's personal tax returns for 2006; said returns shall be signed at Closing.

11.   Complete, signed personal tax returns for 2005 from Gary Starcic and subsequent verification of his tax returns for years 2005 and 2006 with the Internal Revenue Service

12.   Lender's standard *Verification of Employment* form shall be fully completed and signed by Ahyme Depaz-Starcic and subsequent verification from CVS Pharmacy *(form enclosed)*.

13.   Verification of employment from Mount Sinai Medical Center for Joseph E. Herrera.

14.   Question 8 of previously submitted *Declarations* form shall be completed by Gary Starcic *(form enclosed)*.

15.   Previously submitted Renewal Lease Form for apartment 3R at Property #1 shall be signed by current owner.

16.   Current, complete, fully executed, written lease agreement for duplex apartment at Property #1, at a minimum monthly rent of $9,500.00, for a minimum terms of two (2) years. *(Said lease agreement shall have automatic one (1) year renewal options and shall be subordinate to Lender's Mortgage.)*

17.   Previously submitted *Rent Roll* form for Property #1 shall be signed by an authorized officer of Borrower *(form enclosed)*.

18.   Lender's standard *Income & Expense Statement* form shall be fully completed for Property #1 and signed by an authorized officer of Borrower *(form enclosed)*.

19. Valid, permanent certificate of occupancy for Property #1 permitting one (1) Class A duplex apartment on the basement and first floor, and two (2) Class A apartments each on the second through fourth floors.

20. Current, complete, fully executed, written lease agreements for apartments 1, 4 and 5 at Property #2, at minimum monthly rents of $1,600.00, $1,450.00 and $1,3750.00 respectively, for minimum terms of one (1) year each. *(Said lease agreements shall be subordinate to Lender's Mortgage.)*

21. Within ninety (90) days of Closing, occupancy of apartments 2R, 2F and 4F at Property #1 by bona fide tenants and Lender's receipt of current, complete, fully executed written lease agreements for said apartments, at minimum monthly rents of $2,800.00, $2,750.00 and $2,750.00 respectively, for minimum terms of one (1) year each *(said lease agreements shall be subordinate to Lender's Mortgage)*.

22. Lender will consent to release Property #2 from the lien of the Mortgage at such time as the unpaid principal balance of the Mortgage is $2,250,000.00, on the express condition that all of the following conditions have been satisfied to Lender's sole and absolute discretion:

    (a) Satisfaction of Condition 21 above;

    (b) No defaults have occurred pursuant to any of the Loan Documents;

    (c) Borrower has made all payments due and owing since the inception of the Loan on a timely basis and in accordance with the terms and provisions of the Loan Documents;

    (d) Lender's receipt of a written valuation, at Borrower's expense, satisfactory in all respects to Lender, in its sole discretion, indicating a value of not less than $3,462,000.00 *(based on the reduced Loan amount of $2,250,000.00)* and a minimum debt service coverage ratio of 1.25 to 1.00 for Property #1;

    (e) There have been no adverse changes in (i) the condition and tenancy of Property #1; and (ii) the financial condition of the Borrowers and/or its Principals;

    (f) There are no outstanding violations on Property #1; and

    (g) Borrower shall pay Lender's standard prepayment premium based on the amount of the paydown.

**Title Insurance, Survey and Certificate of Occupancy:** Prior to scheduling the Closing, Borrower or Borrower's attorney must order, at Borrower's expense, and have delivered to Lender's counsel:

1. A title commitment for mortgage title insurance in the amount of the Loan issued by a title insurer approved by Lender, with such endorsements as Lender may require, together with complete municipal violation searches and UCC report; all liens and violations on the Property must be disposed of prior to the completion of the Closing.

2. A new or redated survey, noting all improvements on the Property and easements affecting the same, which shall be guaranteed to Borrower, Lender and its successors and assigns, and the title insurance company. The survey shall be an ALTA survey, or in such other form as shall be acceptable to the title insurer for the removal of "survey exceptions".

3.    A valid and permanent **Certificate of Occupancy**, for Property #1, or its equivalent, and any amendments thereto, covering all improvements on the Property, including all additions or extensions, or evidence from the municipality, satisfactory to Lender, that none is required.

4.    A valid and permanent **Certificate of Occupancy/Green Card**, for Property #2, or its equivalent, and any amendments thereto, covering all improvements on the Property, including all additions or extensions, or evidence from the municipality, satisfactory to Lender, that none is required.

Alternatively, if the Borrower wishes to have Lender's counsel order title commitment, survey and certificate of occupancy, as set forth above, at the Borrower's expense, please signify Borrower's such request by initialing the following line: _____

All matters pertaining to the title to the Property, the title insurance coverage, the Borrower's capacity and authority to execute the Loan Documents and all other legal matters relating to the Loan shall be subject to the approval of Lender and Lender's counsel, whose judgment shall be final and conclusive on such matters.

**Leases:** Prior to scheduling the Closing, Borrower shall deliver to Lender true copies of leases for all units, *at minimum monthly rents as specified on the previously submitted rent roll*, including all amendments, extensions and guarantees, together with a current certified rent roll of the Property. All leases must be fully subordinated to the Mortgage securing the Loan. All tenant security deposits made pursuant to leases now or hereafter in effect for Property #1 shall be transferred to and/or deposited in a security account with Emigrant Bank until the Loan is repaid in full.

**Rent Registration:** Within five (5) days of accepting the Commitment, Borrower shall provide Lender with a true and accurate copy of the current rent registration statement for Property #2, filed with the Local Rent Leveling Office.

**Loan Documentation:** All documentation evidencing and securing the Loan will be prepared by Lender's counsel. These documents will include, but not be limited to, a Mortgage Note for the principal amount of the Loan containing the personal obligation of Borrower to repay the same; a first Mortgage covering the Property securing the Note; a collateral Assignment of Leases and Rents with respect to all existing and future leases; UCC financing statements covering the Equipment; a Guaranty of Payment executed by the Guarantor(s), if any, named above; and an environmental indemnity from Borrower, its principals and/or Guarantors, if any. All Loan Documents shall be in such form and contain such terms and conditions as Lender or its counsel shall require, in their sole discretion, and which are not inconsistent with the provisions of this Commitment. Additionally, an opinion of Borrower's counsel, in form and substance satisfactory to Lender and its counsel, shall be required.

Among other terms, the Loan Documents will provide that:

· at Lender's option, the Loan shall become due and payable upon any sale or transfer of the Property, any part thereof or interest therein (including transfers of general partner, member or stockholder interests) or upon placement of subordinate financing on the Property;

· a late charge on any interest, principal or escrow payment overdue, equal to 5% of the amount so overdue;

upon default under the Note, the Mortgage or any other Loan Documents, or upon maturity of the Loan (by acceleration or otherwise), and until the entire Loan and all other charges are paid in full, interest shall be charged at the lesser of: (i) 24% per annum, or (ii) the maximum annual rate allowed to be charged by New York law.

**Lender's Counsel:** Lender will be represented in this Loan transaction by Rappaport, Hertz, Cherson & Rosenthal, P.C., whose address is: 118-35 Queens Boulevard, Forest Hills, NY 11375. All correspondence directed to Lender's counsel should be addressed to the attention of William Rappaport, Esq., whose telephone number is (718) 269-7777.

**THE INTERESTS OF YOU, AS THE BORROWER, AND EMIGRANT FUNDING CORPORATION, AS THE LENDER, ARE OR MAY BE DIFFERENT AND MAY CONFLICT. EMIGRANT'S ATTORNEY REPRESENTS ONLY EMIGRANT AND NOT YOU, THE BORROWER. YOU ARE ADVISED TO EMPLOY AN ATTORNEY OF YOUR OWN CHOICE, LICENSED TO PRACTICE LAW IN NEW JERSEY, TO REPRESENT YOUR INTERESTS.**

You will be required to pay the Lender's attorney's fees, at closing, which fee will be based upon the amount of time which Lender's attorney spends on this loan transaction. The good faith estimate of his fee is $15,000.00, but this is only an estimate. If this estimate is materially exceeded, the Lender shall notify you of the increase when Lender becomes aware of the change and, to the extent possible, at least prior to the loan closing.

**Broker:** Borrower, and Guarantor, if any, represent that the sole broker involved in this transaction is Classic Mortgage (the "Broker"). Except for any compensation Lender may have agreed to pay the Broker pursuant to a separate agreement between Lender and Broker ("Lender's Brokerage Payment"), Borrower shall pay any and all commissions, fees and compensation to Broker or any other broker or brokers claiming to have been involved in this transaction and shall, at Closing, present evidence acceptable to Lender in its sole discretion that all such commissions fees and compensation have been paid. By accepting this Commitment, Borrower, and Guarantor, if any, agree forever to indemnify and save Lender harmless from and against any and all claims or suits for compensation, commissions or otherwise, and all costs, losses and expenses relating thereto including, without limitation, legal fees and disbursements (other than Lender's Brokerage Payment) which may be asserted or made by any person or entity claiming to have dealt with or who has been employed by Borrower, and Guarantor if any, or their representatives. Borrower, and Guarantor if any, acknowledge, consent to and agree that in addition to any broker fee payable by the Borrower to the Broker, Lender may make a Lender's Brokerage Payment to the Broker in connection with the Loan. Borrower, and Guarantor, if any, agree that they have or will obtain from the Broker all information they deem material regarding any Lender's Brokerage Payment. The provisions of this paragraph shall survive the Closing or any expiration or termination of this Commitment.

**Expiration of Commitment:** This Commitment will expire if the Loan does not close on or before June 4, 2008 (the "Commitment Expiration Date"), which date shall be of the essence to the Borrower. The execution of the Loan Documents and the funding of the Loan shall be held at the office of Lender's counsel not later than the Commitment Expiration Date. No closing can be scheduled unless at least 10 days prior thereto Lender or its counsel has received all documentation, certifications and statements, including, but not limited to, title commitment, survey, leases and financial statements, required to be submitted by Borrower pursuant to this Commitment.

**Acceptance of Commitment:** This Commitment shall not become effective unless Borrower shall have accepted the same by executing the enclosed copy hereof and such executed copy is returned to and received at Lender's office, within five (5) days from the date hereof, time being of the essence to the Borrower, together with payment of all fees herein provided for.

**Unless this Commitment is so executed and timely returned to Lender, together with all required fees, the same shall terminate and Lender shall have no further obligation to make the Loan.**

The acceptance of this Commitment shall constitute Borrower's agreement to accept the Loan from Lender; failure to do so shall result in a loss of all of the non-refundable fees (including, but not limited to, the Good Faith Deposit) paid and shall entitle Lender to recover from Borrower, and/or any Guarantor(s), all damages, losses and expenses suffered or incurred by Lender, including, without limitation, Lender's attorneys' fees. Notwithstanding anything to the contrary contained herein, any and all fees, costs and expenses suffered or incurred by Lender in connection with the Loan are due and payable whether or not the Loan closes. If Lender shall default, Borrower, as and for Borrower's sole and exclusive remedy, shall be entitled to a refund of the Commitment Fee paid, in lieu of any direct or consequential damages, which Borrower hereby expressly waives. Under no circumstances shall Lender and/or any of its parents, affiliates, subsidiaries or other related parties and/or any of their respective officers, directors, shareholders, agents and/or employees have any personal liability in connection with this Commitment, the Loan and/or any thing, matter or circumstance related thereto.

Any changes to this Commitment, requested by Borrower and agreed to by Lender, which would cause the issuance of an addendum to this Commitment, will result in the Borrower being charged an additional $250 to be collected at Closing. Each additional addendum will result in a $350 fee to be collected at Closing.

**Cancellation:** Lender reserves the right to cancel this Commitment at any time prior to Closing, if it determines that any information or documentation included with Borrower's application for the Loan, or subsequently submitted, is either incorrect, or has changed, in any material respect or in the event there have been adverse changes in the condition and/or the occupancy or tenancy of the Property and/or the financial condition of Borrower, any Guarantor, and/or its Principals. All matters with regard to the Property, the Loan and the Closing must be satisfactory in all respects to Lender and its counsel.

**Entire Agreement; No Assignment:** This Commitment represents the entire agreement between Lender and Borrower and supersedes all prior oral or written understandings between said parties or any employee, officer or agent acting on their behalf, and no waiver, modification or extension of any of its provisions shall be binding on Lender, unless it is in writing and executed by an authorized officer of Lender. This Commitment is issued for the sole benefit of the Borrower named herein and shall not be assignable by Borrower without Lender's prior written consent.

Very truly yours,

EMIGRANT FUNDING CORPORATION

By: _____

Accepted and Agreed to

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Renato A. Starcic for Corporation to be formed | Date | Carla Starcic for Corporation to be formed | Date |
| | | | |
| _____ | _____ | _____ | _____ |
| Joseph E. Herrera for Corporation to be formed | Date | Sandra Starcic-Herrera for Corporation to be formed | Date |
| | | | |
| _____ | _____ | _____ | _____ |
| Ronald Starcic for Corporation to be formed | Date | Ahyme Depaz-Starcic for Corporation to be formed | Date |
| | | | |
| _____ | _____ | | |
| Gary Starcic for Corporation to be formed | Date | | |

**BORROWER:** Please set forth the name, address, and telephone number of the attorney who will be representing you in this transaction.

_____
Attorney Name

_____
Company Name

_____
Address

_____
City, State  Zip

_____
Telephone

_____
Fax

Commitment #20080053                    8

### RIDER A TO COMMITMENT
### OPTION FOR EXTENSION

1.  **Option for Extension.** Subject to the terms and provisions hereof, Borrower shall have one (1) option to extend the maturity date of the Loan (an "Extension"), for a period of five (5) years (the "Extension Period"), provided: (i) Borrower gives Lender written notice of its election to exercise the Extension not more than 90 days nor less than 60 days prior to the maturity date of the Loan; (ii) no Event of Default exists under the Loan Documents, or will exist up to the commencement of the Extension Period, and Borrower has otherwise satisfactorily performed all of its obligations under said Loan Documents; (iii) Borrower's credit standing has not deteriorated, and no deterioration in the market or physical condition of the Property has occurred; and (iv) Borrower pays Lender an extension fee equal to one percent (1%) of the unpaid balance of the Loan concurrently with its notice to extend the maturity date, and pays all costs and fees related to such Extension.

2.  **Interest Rate and Constant Payments during Extension.** The rate of interest and monthly payments during the Extension shall be adjusted as follows:

    From and after the first day of the Extension Period, the interest rate shall be adjusted to be the greater of (i) the interest rate payable with respect to the Loan immediately preceding the original maturity date or (ii) five and one-quarter (5.25%) percent per annum above the Federal Home Loan Bank of New York five (5) year fixed advance rate charged to member banks as made available by the Federal Home Loan Bank of New York as of the close of business on that date (or if such date is not a business day, then the business day immediately prior thereto) that is five (5) days prior to the original maturity date of the Loan rounded up to the nearest one-eighth (1/8) of one (1%) percent. The monthly payment amount shall be adjusted to reflect the remaining twenty-five (25) years of a thirty (30) year amortization period.

3.    Prepayment. During the Extension Period, in full only, on ninety (90) days prior notice to Lender, together with a prepayment premium equal to: five (5%) percent of the amount prepaid (whether voluntarily or following acceleration upon default) during the first loan year of the Extension Period with the premium thereafter declining during the succeeding loan years of the Extension at the same rate as during the initial term of the Loan.

Accepted and Agreed to

_____        _____        _____        _____
Renato A. Starcic for              Date                Carla Starcic for                  Date
Corporation to be formed                               Corporation to be formed

_____        _____        _____        _____
Joseph E. Herrera for              Date                Sandra Starcic-Herrera for         Date
Corporation to be formed                               Corporation to be formed

_____        _____        _____        _____
Ronald Starcic for                 Date                Ahyme Depaz-Starcic for            Date
Corporation to be formed                               Corporation to be formed

_____        _____
Gary Starcic for                   Date
Corporation to be formed

# EMIGRANT FUNDING CORPORATION
## HAZARD INSURANCE REQUIREMENTS FOR BORROWERS

1. Insurance Company Ratings - A.M. Best rating of A-, VIII or better. If the company is not rated by AM Best, the company must be rated A or better by Demotech Inc. or BBB or better by Standard & Poors (if not rated by Demotech).

2. Property Insurance - "All risk" hazard insurance policy, written with replacement cost valuation, an "agreed amount" clause or waiver of coinsurance. Deductibles should be no more than $10,000.00.

   Ordinance/Law coverage required if property is non-conforming.

   Boiler and machinery coverage required if there are steam boilers or other pressure vessels on premises.

   Flood Insurance is required if property is in A or V flood zone.

   Business income/rents coverage equal to twelve months or actual loss sustained.

   Pollution Clean-Up and Third Party Liability Policy.

   Earthquake Insurance is required if deemed to be necessary by lender.

   If the property is a condominium, you must deliver a Master Policy Insurance Certificate or binder meeting all of the requirements of the previous paragraphs.

3. Liability Insurance - A minimum of $1 million per occurrence and $2 million in the aggregate is required.

4. Other Coverages - Workers' compensation insurance should be maintained if there are employees. Fidelity (crime) insurance required if borrower is a co-op or condominium association.

5. Evidence of Coverage - Prior to closing, please submit either certificates of insurance, a binder or a complete set of insurance policies evidencing the above. If you provide a binder instead of an insurance policy, the binder must meet all of the requirements of the first and second paragraphs above. In addition, the binder should include the identity of the authorized representative executing the binder, the effective date of the coverage, and an indication that the binder temporarily obligates the insurer to provide the insurance coverage pending issuance of the insurance policy. The cancellation of such a binder must be governed at the minimum by the provisions of the standard "all risk" insurance policy and the provisions of the insurance law applicable thereto.

6. Emigrant must be named as a mortgagee for property insurance, loss payee for loss of rents or business income, and an additional insured for liability insurance.

   The certificate holder/mortgage clause should be in favor of:

   "Emigrant Funding Corporation ISAA ATIMA, 6 East 43rd Street, New York, NY 10017"

7. The Borrower's agent must provide a list of annual premiums by policies and either a paid receipt or a letter stating that premiums have been paid in full.

Commitment #20080053                          11

# EMIGRANT FUNDING CORPORATION
## BORROWER REQUIREMENTS FOR TITLE INSURANCE
## AND SEARCHES OF PUBLIC RECORDS
### New York

A policy of mortgagee title insurance in form and substance satisfactory to Lender and Lender's counsel in the amount of the Mortgage and issued by a company or companies approved by Lender must be furnished to Lender at the Closing. The policy shall contain such endorsements as Lender and Lender's counsel may require. YOU SHOULD CONSULT PROMPTLY WITH OUR COUNSEL REGARDING OUR ENDORSEMENT REQUIREMENTS. The following title insurance companies are acceptable to Lender: American Pioneer Title Insurance Company, Attorney Title Insurance Fund (FL), Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, Connecticut Attorney's Title Insurance Company, Fidelity National Title Insurance Company, First American Title Co., First Atlantic Title Insurance Company, Investors Title Insurance Company, Lawyers Title Insurance Company, Monroe Title Insurance Company, National Title Insurance Company, Nations Title Insurance Company of New York, Northeast Investors Title Insurance Company, Old Republic National Title Insurance Company, Security Title Guarantee of Baltimore, Security Union Title Insurance Company, Stewart Title Guaranty Company, Ticor Title Insurance Company and Transnation Title Insurance Company.

Lender will only accept title insurance policies from title insurance companies that are rated B or better from LACE Financial Corporation. The above approved companies currently meet this requirement. If the title company does not have a Claims-Paying Ability rating by LACE or has a rating below B, the borrower will be required to change their title company to confirm with Lender's requirements.

**Please order title and advise your title company to provide us with two (2) copies of the title report including, UCC-1 (state and county) and bankruptcies, judgments and liens against the Borrower/Guarantor, together with two (2) prints of the survey, redated and certified to Emigrant Funding Corporation, its successors and/or assigns.**

Also, please order complete municipal departmental searches as follows:

1.  Fire Department;
2.  Housing and Building Departments;
3.  Emergency Repairs;
4.  Street Report;
5.  Highway Department;
6.  Air Resources; and
7.  Certificate of Occupancy

In addition to the above standard searches, the following searches should be ordered, if applicable:

1.  Landmark Search (if the Property is located in a designated landmark district);
2.  Health Department (if there is an eating or food establishment at the Property); and
3.  Oil Burner (if there is a boiler at the Property).

If determined by Lender's counsel, the title company may be required to deliver a Municipal Search Letter.

# EMIGRANT ▮ FUNDING

## REQUEST FOR VERIFICATION OF EMPLOYMENT

**PART I -**     *Applicant must complete Items 1, 7 & 8*
               *Lender must complete Items 2, 3, 4, 5 & 6*

**PARTS II & III -** *Employer should complete either Part II or Part III as applicable.*
                                 *Sign and return directly to Emigrant Funding Corp.*

### PART I

**1. TO: (FILL IN NAME, ADDRESS AND PHONE NUMBER OF EMPLOYER)**

NAME:

ADDRESS:

TELEPHONE:

**2. REQUESTOR:**

Attn:
Emigrant Funding Corp.
6 East 43rd Street, 9th Floor
New York, NY 10017
Tel: 212-850-4690   Fax: 212-850-4691

*I certify that this verification has been sent directly to the bank or depository and has not passed through the hands of the applicant or any other party.*

**3. SIGNATURE OF LENDER OR OFFICIAL**

_____
Signature

**4. TITLE**

**5. DATE**

**6. EMIGRANT No.**

**7. NAME AND ADDRESS OF APPLICANT (Include employee or badge number.)**

**8. SIGNATURE OF APPLICANT**

### PART II

| EMPLOYMENT DATA | PAY DATA | | |
|---|---|---|---|
| **9. APPLICANT'S DATE OF EMPLOYMENT:** | **12A.** Current pay: (Enter amount and check period) | | **12C. For military personnel only:** |
| | ANNUAL    HOURLY | | **PAY GRADE:** |
| **10. PRESENT POSITION:** | MONTHLY    OTHER | | |
| | WEEKLY    (Specify) | | |

| | | | TYPE | MONTHLY AMOUNT |
|---|---|---|---|---|
| | **12B.** Earnings | | | |

| TYPE | YEAR TO DATE | PAST YEAR | TYPE | MONTHLY AMOUNT |
|---|---|---|---|---|
| **11. PROBABILITY OF CONTINUED EMPLOYMENT:** | | | Base Pay | $ |
| Base Pay | $ | $ | Rations | $ |
| | | | Flight or Hazard | $ |
| (If overtime or bonus is applicable, is its continuance likely?) | Overtime | $ | Clothing | $ |
| | | | Quarters | $ |
| | Commissions | $ | $ | Pro Pay | $ |
| OVERTIME:   YES   NO | | | Overseas or Combat | $ |
| BONUS:   YES   NO | Bonus | $ | $ | | |

**14. REMARKS:** *(If paid hourly, please indicate average hours worked each week during current and past year)*

### PART III

**15. DATES OF EMPLOYMENT**

**16. SALARY/WAGE AT TERMINATION PER. (Year) (Month) (Week)**

BASE     OVERTIME _____ COMMISSIONS _____ BONUS

**17. REASON FOR LEAVING**

**18. POSITION HELD**

**19. SIGNATURE OF EMPLOYER**

**20. EMPLOYER TITLE**

*The confidentiality of the information you have furnished will be preserved except where disclosure is required by applicable law. The completed form is to be transmitted directly to Emigrant Funding Corp. and is not to be transmitted through the applicant or any other party.*

**PLEASE RETURN DIRECTLY TO EMIGRANT FUNDING CORP.**

Form 11- (02/00)

REQUESTED
OF THE SELLER

# EMIGRANT /// FUNDING

**RENT ROLL**
(We can accept a *signed* owner's printout in substitution for this form.)

| Property Address: | 346 East 51st |
|---|---|
| | NY NY 10021 |

| Tenant | Unit # or Description | # of Rooms or Sq. Ft. | Monthly Rent | Lease From | Lease To | Expense Pass-Throughs |
|---|---|---|---|---|---|---|
| **APARTMENTS:** | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **COMMERCIAL:** | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| **TOTALS:** | | | | | | |

*See Attached*

| | | | | |
|---|---|---|---|---|
| No. of Apts. Vacant: | | Total No. of Apts.: | | |
| No. of Stores. Vacant: | | Total No. of Stores: | | |
| No. of Offices. Vacant: | | Total No. of Office: | | |
| No. of Whses. Vacant: | | Total No. of Whses.: | | |

**Utilities Include:**

Gas:   Y   N
Elec.:   Y   N
Heat:   Y   N
Water:   Y   N
A/C:   Y   N

| | | |
|---|---|---|
| Is the property subject to rent stabilization? | Yes | No |
| No. of apts. rented furnished: | No. unfurnished: | |

**I HEREBY CERTIFY THE ABOVE TO BE TRUE AND CORRECT.**

SIGN HERE: _____    Date: _____

PRINT NAME: _____

(4/90)

## EMIGRANT /// FUNDING

### DECLARATIONS

These Questions Apply to Both Borrower and Co-Borrower

| | Borrower | Co-Borrower |
|---|---|---|
| Individual Borrower Name (please print) | Gary Storcic | |
| Home Address | 142 Shalen Ave, Apt 5 Fairview, NJ 07022 | |
| Social Security Number | 139 - 80 - 5013 | - - |
| Date of Birth (Month/Day/Year) | 11 / 13 / 79 | / / |

|  | Yes No | | Yes No |
|---|---|---|---|
| 1. a. Are you a US citizen? ( If "yes", skip b. and c.) | 1. a. ☒ ☐ | 1. a. ☐ ☐ |
| b. If "no", are you a Resident Alien? | b. ☐ ☐ | b. ☐ ☐ |
| c. If "no", are you a Non-Resident Alien? | c. ☐ ☐ | c. ☐ ☐ |
| 2. Do you have diplomatic immunity? | 2. ☐ ☒ | 2. ☐ ☐ |
| 3. Do you intend to occupy the property as your primary residence? | 3. ☐ ☒ | 3. ☐ ☐ |
| 4. Do you intend to operate an owner-occupied business at the property? | 4. ☐ ☒ | 4. ☐ ☐ |
| 5. Are there any outstanding judgments against you? | 5. ☐ ☒ | 5. ☐ ☐ |
| 6. In the last seven years, have you been the subject of a bankruptcy case? | 6. ☐ ☒ | 6. ☐ ☐ |
| 7. Are you a party in a lawsuit? (If "yes" provide explanation in separate page) | 7. ☐ ☒ | 7. ☐ ☐ |
| 8. For any legal, equitable, beneficial, or other interest owned in real estate properties. | | |
| a. Payment(s) past due 30 days (including forbearance agreement)? | 8. a. ☐ ☐ | 8. a. ☐ ☐ |
| b. Foreclosure/deed in lieu of foreclosure action(s) taken? | b. ☐ ☐ | b. ☐ ☐ |
| c. Petition(s) in bankruptcy filed by the borrower? | c. ☐ ☐ | c. ☐ ☐ |

### SCHEDULE OF REAL ESTATE OWNED

List below, all real estate properties in which the borrower and each general partner, controlling shareholder with 10% or more interest or beneficiary of the borrower in a trust has any legal, equitable, beneficial or other interest.

| 1. Property type codes | 2. Payment status codes |
|---|---|
| R - Rental | C - Current |
| C - Commercial | D - Delinquent (payments 30 days or more past due) |
| M - Mixed-use | F - Forbearance |
| S - 1-4 Family | B - Bankruptcy |
| L - Land | F/C - Foreclosure |
| | (If other than current, attach explanation) |

### PROPERTY INFORMATION

| Property Address | | | | | Amount of Mtgs. & Liens | Account Number |
|---|---|---|---|---|---|---|
| 397 ROOSVELT STREET FAIRVIEW NJ | | | | | $ 200,000. | PRIVATE LENDER JOHN SUPINO |
| Property type R | # of Units 6 | % ownership 25% | Present Market Value $ 300,000. | | | |
| Date of Purchase FEB. X. 07 | Price $ 1,000,000 | Lender's name: JOHN SUPINO | Payment Status: CURENT | | | |
| Property Address | | | | | | |
| Property type | # of Units | % ownership | Present Market Value $ | | | |
| Date of Purchase | Price $ | Lender's name: | Payment Status: | | | |
| Property Address | | | | | | |
| Property type | # of Units | % ownership | Present Market Value $ | | | |
| Date of Purchase | Price $ | Lender's name: | Payment Status: | | | |

I HEREBY CERTIFY THE ABOVE TO BE TRUE AND CORRECT.

_Gary Storcic_
Borrower's Signature

MAR. 29, 08
Date

APR 1 2008

Co-Borrower's Signature

Date

R.R. for

346 EAST 51ST STREET NY NY

$ XXXXX
$ 8000

$16,000

Future

LF      1,500.00    RENOVATED
OWNER DUPLEX      2. RENOVATED 2,200 SQ.F.
2F      3,000.00    RENOVATED
2R      3,000.00    RENOVATED
3F        744.00    R. STABILIZED
3R      1,030.00    2. STABILIZED
4F      3,000.00    RENOVATED
4R      1,346.00    RNT STABILIZED


TAXES  52,729.
WATER ISEW  4,380.
INSURANCE  7,258.
GAS HEAT  5,648.
HALL ELECT.  3,000.

Type  Residential

Floor 1 & 2 are being
used currently by owner
future $16000
fair market
rental

Emigrant Funding Corp.

# EMIGRANT ✦ FUNDING

## INCOME & EXPENSE STATEMENT
(We can accept a *signed* owner's printout in substitution for this form.)

Property Address:

| | Last Actual Year: 200_ | | Current Year Projected |
|---|---|---|---|
| **INCOME:** | | **INCOME:** | |
| Apartment Income: | _____ | Apartment Income: | _____ |
| Retail Income: | _____ | Retail Income: | _____ |
| Office Income: | _____ | Office Income: | _____ |
| Other Income: _____ | _____ | Other Income: _____ | _____ |
| | | | |
| Total Income: | _____ | Total Income: | _____ |
| | | | |
| **EXPENSES:** | | **EXPENSES:** | |
| Real Estate Taxes: | _____ | Real Estate Taxes: | _____ |
| Water & Sewer: | _____ | Water & Sewer: | _____ |
| Property Insurance: | _____ | Property Insurance: | _____ |
| Fuel (Oil/Gas): | _____ | Fuel (Oil/Gas): | _____ |
| Electric: | _____ | Electric: | _____ |
| Payroll: | _____ | Payroll: | _____ |
| Repairs & Maintenance: | _____ | Repairs & Maintenance: | _____ |
| Elevator Maintenance: | _____ | Elevator Maintenance: | _____ |
| Common Area Maintenance: | _____ | Common Area Maintenance: | _____ |
| Management: | _____ | Management: | _____ |
| Replacement Reserves: | _____ | Replacement Reserves: | _____ |
| Supplies: | _____ | Supplies: | _____ |
| Other: _____ | _____ | Other: _____ | _____ |
| Other: _____ | _____ | Other: _____ | _____ |
| Other: _____ | _____ | Other: _____ | _____ |
| | | | |
| Total Expenses: | _____ | Total Expenses: | _____ |
| | | | |
| NET OPERATING INCOME: | _____ | NET OPERATING INCOME: | _____ |

**I HEREBY CERTIFY THE ABOVE TO BE TRUE AND CORRECT.**

SIGN HERE: _____       Date: _____

PRINT NAME: _____

Form 5 - (01/01/06)

**LAW OFFICE OF KARIN SCHULT RYAN**
301 MORRIS AVENUE
ROCKVILLE CENTER, NEW YORK 11570
(516) 763-0734
Fax: (516) 763-1042

May 6, 2008

John Zunic, Esq..
216 Anderson Ave.
Fairview, New Jersey  07022-1468

**RE: Kunzmann – Starcic  346 East 51st Street, New York, New York**

Dear Mr. Zunic:

Your clients have failed and refused to tender the balance of the down payment within three business days of having received a commitment from a lending institution, in violation of the clear terms of the Rider to the Contract of Sale.

Therefore, your clients are in breach of contract, and Mr. and Mrs. Kunzmann are entitled to retain the down payment as liquidated damages.  As per the terms of the contract, the down payment constitutes 10% of the purchase price, totalling $417,500.  In addition, your clients are responsible to pay the commission due the broker.

My clients would, naturally, prefer to continue with the transaction.  Therefore, if your clients cure the default and tender the balance of the down payment immediately, we will hold the monies pending closing of title or a future intentional breach of contract by either party.

Sincerely,


Karin Schult Ryan

CERTIFIED MAIL RRR